Chester A. PAGE, Plaintiff,

v.

**CURTISS–WRIGHT CORPORATION**
et al., Defendants.

Civ. A. No. 1440–70.

United States District Court,
D. New Jersey.

Oct. 18, 1971.

Ferro, Lamb & Kern, by Walter M. D. Kern, Jr., Ridgewood, N. J., Russell Specter, Washington, D. C., for plaintiff.

Alfred J. Kovell, Wood Ridge, N. J., for defendants.

## MEMORANDUM OPINION

LACEY, District Judge:

Plaintiff, employed by the defendant Curtiss-Wright Corporation (Curtiss-Wright) from April 3, 1951, until August 30, 1970,[1] and a member, during said term of employment, of the defendant International Union United Automobile, Aerospace and Agricultural Implement Workers of America, Amalgamated Local 669–UAW (the Union), alleges herein racial discrimination in employment against him and other Negro persons, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Plaintiff further alleges violation by defendant Union of the duty of fair representation owed to him and other members of the Union under the provisions of the Labor-Management Relations Act, 29 U.S.C. § 151 et seq.

Jurisdiction of this Court is claimed under 28 U.S.C. § 1343(4), in addition to the foregoing statutory provisions.[2] Relief sought includes damages and injunctive relief.

This matter comes on by reason of various motions made by the defendant Curtiss-Wright. Thus, it moves under F.R.Civ.P. 12 for dismissal of the Complaint, or judgment on the pleadings, on the ground that this Court lacks jurisdiction over the subject matter in that plaintiff failed to satisfy certain alleged statutory conditions precedent to court action. It also moves pursuant to F.R. Civ.P. 23 for a determination that the action is not maintainable as a class action because plaintiff's claim against it is not typical of the claim, if any, of any class and he does not represent any class. Finally, it moves pursuant to F.R.Civ.P. 56 for summary judgment in its favor on plaintiff's claim for the reason that (a) plaintiff's claim herein was submitted to arbitration and decided adversely to him; (b) that the claim was decided adversely to plaintiff by the cognizant federal agency administering the non-discrimination in employment provisions of Executive Order 11246 (applicable to contractors with the U.S. Government); and (c) on the ground that plaintiff has failed to exhaust his administrative appeal remedies under the said Executive Order.

For purposes of the motion under F.R. Civ.P. 12 the allegations of the Complaint must be accepted as true. Young v. I. T. & T., 438 F.2d 757, 758 (3 Cir. 1971). They follow:

Plaintiff is a black citizen of the United States, residing in Passaic, New Jersey. Defendant Curtiss-Wright is a corporation operating a plant in Wood-

---

1. Since August 30, 1970 plaintiff has been on layoff with certain recall rights under the terms of the collective bargaining agreement.

2. 28 U.S.C. § 1343(4): "To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote. * * *" Plaintiff invokes 28 U.S.C. § 2201 (Fed. Declaratory Judgment Act) mistakenly. "The Declaratory Judgment Act itself 'is procedural only.' Aetna Life Ins. Co. [of Hartford, Conn.] v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). * * *" McCahill v. Borough of Fox Chapel, 438 F.2d 213, 214 (3 Cir. 1971).

Ridge, New Jersey, where plaintiff was employed during the relevant times of this controversy in suit; and this defendant is an employer within the meaning of 42 U.S.C. § 2000e(b) and (c) in that it is engaged in an industry affecting commerce and employs at least twenty-five persons. Defendant Union is a labor organization within the meaning of 42 U.S.C. § 2000e(c) and (d) in that it is engaged in an industry affecting commerce and exists for the purpose of dealing with Curtiss-Wright concerning grievances, labor disputes, wages, rates of pay, and other terms and conditions of employment of the employees of the company throughout the United States. The individual defendant Anthony Reed is president of the Union. At all material times herein plaintiff's employment has been under and pursuant to collective bargaining agreements between the company and the Union. By these agreements the defendants have established a promotional and seniority system, the purpose and effect of which is to continue policies and practices which limit the employment and promotional opportunity of black employees because of race or color.

During his entire period of employment plaintiff has been a dues paying member of the Union.

In July, 1967, plaintiff applied for promotion to Refrigeration-Air Conditioner Operator but was rejected in favor of a white man who was hired from outside as a "journeyman."[3] Plaintiff then filed a grievance through the Union. Arbitration ensued and by decision of the arbitrator plaintiff was awarded the sought for position. In the meantime the recently hired Operator had resigned. Another white man (Artale), also a "journeyman," was then hired as a new employee to take his place. The arbitration decision issued on May 2, 1968, Artale was hired on May 16, 1968, to start work on May 20, 1968; and plaintiff was started in his new classification the same day as Artale, May 20, 1968, but plaintiff claims, with 4 days less seniority. The plaintiff later took this issue to arbitration and the award, issued on July 7, 1969, directed that plaintiff have a seniority date of May 6, 1968. Meanwhile, however, on September 9, 1968, plaintiff was removed from his new position, or, in the words of the company, "excessed," while Artale was retained, this action on the basis of an alphabetical seniority system, according to plaintiff.[3a] Plaintiff then returned to his former job in the company.

This "excess" is charged to have been preplanned by and between the defend-

---

3. The collective bargaining agreement defines the term "journeyman" as an employee: "(a) who holds a Certificate of Apprenticeship establishing that he has completed a bonafide apprenticeship program. (b) who does not hold a certificate of apprenticeship, but is classified in a skilled trades occupation or is on the recall list of such an occupation as of the date it is agreed, pursuant to the preceding paragraph, that such occupation shall be covered by these special provisions. Such an employee shall be known as a 'Contractual Journeyman.' (c) who has satisfactory written proof of ten (10) years experience in the trade. (d) Changeover Employee who has successfully completed thirty (30) months, may, in his thirtieth (30th) month request and be classified as a Journeyman. * * *" The collective bargaining agreement defines "Changeover Employees" as: "1.

'Changeover transfers' are employees transferred from another occupation to a skilled trades occupation. The provisions of Article 30, Sections 1–7, inclusive, of the Title, Promotions, shall govern the promotion of employees to skilled trades occupations. 2. 'Changeover hires' are non-journeymen hired into skilled trade occupations." Defendants place plaintiff in the "changeover transfer" category; Artale is placed in the "journeyman" category.

3a. It appears, however, that plaintiff was returned to the Refrigeration-Air Conditioner Operator classification on February 3, 1969; was "excessed" again on October 20, 1969, back to his power trucker job; was "excessed" still lower to a janitor's job on August 17, 1970; and on August 30, 1970, was laid off. See Appendix A for a full chronology of significant events.

ants as a continuing effort to exclude plaintiff and all members of the class he purports to represent "from hitherto all Caucasian classification." It is further said to constitute segregation and discrimination against blacks in the company's plant.

It is further charged that, as an additional means of unlawful discrimination against plaintiff and other blacks, Curtiss-Wright instituted a testing system on certain jobs; that these were not "professionally developed ability tests;" and that they were intended to discriminate against blacks.[4]

On February 24, 1969, within 210 days of the occurrence of the acts of which he complains, plaintiff filed written charges with the Equal Employment Opportunity Commission alleging denial by defendants of plaintiff's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. On September 30, 1969, the Commission found reasonable cause to believe that defendants had committed a violation of the Act. Then, on September 25, 1970, plaintiff was advised by the Commission that defendants' compliance with Title VII had not been accomplished within the period allowed, and that he was entitled to institute a civil action in the federal court within 30 days of receipt of said notice.[5] Complaint was filed on October 26, 1970.

Further as to the Union, plaintiff charges it violated its duty to fairly represent him in that the Union acquiesced and joined in unlawful and discriminatory practices of the company, and failed to protect blacks from such discrimination.

The moving defendant argues for dismissal of the Complaint under F.R.Civ.

P. 12, contending first that the statutory conditions precedent to suit under Title VII have not been fulfilled. Limiting our factual view to the allegations of the Complaint as we must, it does appear, in the light of statutory requirements, that there is lacking the averment that plaintiff submitted to the appropriate state agency his claim of discrimination. Submission is required under 42 U.S.C. § 2000e–5(b) and (d) if the alleged unlawful employment practice occurs in a state having a law prohibiting the practice and establishing a state authority to grant or seek relief from such a practice. New Jersey is such a state. N.J. S.A. 10:5–1, 10:5–14.1 et seq.

However, consideration of this deficiency need not detain us long. As a practical matter, as will hereinafter appear, we are informed by materials submitted on the motion for summary judgment that the E.E.O.C. in fact submitted this matter for state agency consideration. Thus, were this flaw in pleading a fatal one, necessitating dismissal of the Complaint for failure to state a claim under Title VII, we would permit amendment on liberal terms. Here, however, while desirable, amendment is not necessary in that the Complaint continues to state a cause of action under 42 U.S.C. § 1981.

The validity of plaintiff's claim, accepting his averments as true, is clear. Two recent decisions of this Circuit's Court of Appeals leave no doubt as to this.

In Young v. I. T. & T., 438 F.2d 757 (3 Cir. 1971), it was held that a § 1981 claim stood on its own, separate and apart from a claim under Title VII, and would not be colored by any frailties in

---

4. *See* Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), which holds tests must be job-related; *and see* Contractors Ass'n. of Eastern Penn. v. Shultz, et al., 442 F.2d 159, 172 (3 Cir. 1971) cert. denied, Contractors Ass'n of Eastern Penn. v. Hodgson, 404 U.S. ——, 92 S.Ct. 98, 30 L.Ed.2d 95.

5. *Cf.* Stebbins v. Continental Ins. Co., 442 F.2d 843 (D.C.Cir.1971), richly studded with notes annotating Title VII and its legislative history. Fekete v. U. S. Steel Corp., 424 F.2d 331 (3 Cir. 1970), holds no E.E.O.C. finding of reasonable cause is required as a prerequisite to a Title VII suit. Other recent Third Circuit cases are hereinafter set forth. *See* p. 1063, *infra.*

the Title VII claim. Thus Judge Gibbons there stated (438 F.2d at 763):

> We conclude that nothing in Title VII of the Civil Rights Act of 1964 imposes any jurisdictional barrier to a suit brought under § 1981 charging discrimination in private employment.

Thereafter came Hackett v. McGuire Bros. Inc., 445 F.2d 442 (3 Cir. 1971), where Judge Gibbons stated (at 445–446):

> * * * Hackett says that he was discriminated against in seniority and in vacation schedules, and was discharged, because of his race. If this is so he has been aggrieved. Hackett says the Union discriminated against him because of his race. If this is so he has been aggrieved.[6]

Then, after upholding the claim as one properly within Title VII, Judge Gibbons said (*Id.* at 446):

> What we have said with respect to Hackett's standing to sue under Title VII applies at least equally to his right to sue under 42 U.S.C. § 1981. That cause of action was not discussed by the district court, undoubtedly because the case was decided before the decision of this court in Young v. International Telephone & Telegraph Co., 438 F.2d 757 (3 Cir. 1971). Hackett is a Negro and purports to represent potential and actual Negro employees in eliminating discrimination by McGuire and by Local 187. The *Young* case recognizes his right to bring such a suit under § 1981.

The moving defendant argues further that, even if a claim lies under § 1981, given proper circumstances, it is barred by the applicable statute of limitations. This defendant reasons that, since § 1981 itself contains no statute of limitations, resort must be had to the most analogous state limitations statute.[7] This is said by defendant to be the New Jersey two-year statute of limitations (N.J.S.A. 2A:14–2), citing Hughes v. Smith, 264 F.Supp. 767 (D.N.J.1967), aff'd. per curiam, 389 F.2d 42 (3 Cir. 1968), which applied the two-year New Jersey personal injury statute of limitations (N.J. S.A. 2A:14–2) to bar a civil rights claim under 42 U.S.C. § 1983.

▮ Although it is New Jersey's statute of limitations which applies, *Hughes* is inapposite. The case at bar involves not bodily injury allegedly inflicted by policemen as in *Hughes*; it is concerned with suit on an employment contract and invokes, as well, a collective bargain-

---

6. Judge Gibbons' resolution of the § 1981—Title VII dilemma has been recently endorsed in Caldwell v. National Brewing Company, 443 F.2d 1044, 1046 (5 Cir. 1971). *Cf.* Stebbins v. Continental Ins. Co., *supra* at 847; Richardson v. Miller, et al., 446 F.2d 1247 (3 Cir. 1971).

7. *See* Young v. I. T. & T., supra at 763: " * * * There is no federal statute of limitations applicable to § 1981, and the federal courts would look to the most nearly analogous state statute of limitations. See Henig v. Odorioso, 385 F.2d 491 (3d Cir. 1967), cert. denied 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166 (1968). * * * " *And see* Butler v. Sinn, et al., 423 F.2d 1116, 1117 (3 Cir. 1970): "The statute of limitations applicable to an action brought pursuant to 42 U.S.C. § 1983 or § 1985 (1964) is that of the state in which the cause of action arose. O'Sullivan v. Felix, 233 U.S. 318 [34 S.Ct. 596, 58 L.Ed. 980] (1914); Hileman v. Knable, 391 F.2d 596 (3 Cir. 1968); Jones v. Bombeck, 375 F.2d 737 (3 Cir. 1967). * * * " *Butler*, without discussion, in a § 1983 case based upon an alleged malicious prosecution, accepted unquestioningly a plaintiff's claim that the New Jersey 6-year statute of limitations applicable to malicious prosecution applied, citing N.J. S.A. 2A:14–1. *Butler* did not refer to Hughes, decided two years earlier. *See also* Abrams v. Carrier Corp., et al., 434 F.2d 1234, 1251 (2 Cir. 1970), cert. denied United Steelworkers of America AFL-CIO v. Abrams et al., 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971), where, in a labor relations case, the Court stated: "In the case of federal rights created by statute, the traditional rule has long been that the district court is to look to the law of the state where it sits to determine the approximate limitation period when no such limitation has been provided by Congress. * * * (Citing cases)." *And see* 42 U.S.C. § 1988.

ing agreement between the Union and plaintiff's employer. It is true that, as a result of the alleged violations of plaintiff's contractually derived civil rights, he claims, in addition to money damages resulting therefrom, damages for certain physical injuries alleged to flow indirectly from the primary wrong; however, this latter contention is not the primary or principal issue herein, and thus we do not look to *Hughes* for guidance.

Instead, we turn to *Young* for an answer—and one emerges. § 1981 is there held applicable to private acts of discrimination, and § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right * * * to make and enforce contracts * * * as is enjoyed by white citizens. * * *

Judge Gibbons, in *Young*, then observes (438 F.2d at 760):

> Defendants also contend that assuming the applicability of § 1981 to certain private acts of discrimination, a fair reading of the statute precludes the construction that it was intended to apply to the employment situation. We cannot agree. In the context of the Reconstruction it would be hard to imagine to what contract right the Congress was more likely to have been referring. * * *

 It is thus readily perceptible that we deal here with a civil rights claim essentially founded upon invasion of a contractual right. *See also* Boudreaux v. Baton Rouge Marine Contracting Co., 437 F.2d 1011, 1017 (5 Cir. 1971); Waters v. Wisconsin Steel Works of Int'l. Harvester Co., 427 F.2d 476 (7 Cir. 1970), cert. denied 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970), where Courts of Appeals applied to § 1981 suits, based upon alleged discrimination in employment, state limitations statutes related to actions for breach of contracts. Accordingly, it is New Jersey's six-year statute of limitations (N.J.S.A. 2A:-14–1) which, as a matter of federal law, is determined to govern plaintiff's claim.

*Cf.* Green v. McDonnell-Douglas Corp., 318 F.Supp. 846, 849 (E.D.Mo.1970).

Accordingly, defendant's Rule 12 motions are denied.

Turning next to Curtiss-Wright's motion for summary judgment (F.R.Civ.P. 56), it is grounded first upon the erroneous assumption that the relief sought herein is congruent with the plaintiff's grievances determined by arbitration decisions on May 2, 1968, and July 7, 1969 (the arbitration opinions are, respectively, Exhibits C and D to the Austein affidavit of May 4, 1971, submitted in support of the defendant's motion). Analysis of each arbitration proceeding is appropriate.

The first grievance was heard on February 21 and March 18, 1968, pursuant to the collective bargaining agreement, on the following issue:

> Did the Company violate Article 3, 4, 30 and/or 42 or any other provision of the Agreement or any other valid understandings between the parties when it refused to give Chester Page a changeover transfer to the job of Refrigeration-Air Condition Operator? If so, what shall be the remedy?

The Arbitrator in his decision of May 2, 1968, found the following facts:

> Chester Page, a Power Trucker, was hired in 1951 as a Janitor. On August 16, 1967 he filed the instant grievance *charging discrimination* on the Company's failure to honor his request to be upgraded to the job of Refrigeration-Air Condition Operator and instead hiring a new man from the street. The Company denied the charge, stating that in filling the vacancy in question, it considered and evaluated Page's qualifications and determined that he did not possess the needed qualifications and practical experience to do the work required. This judgment was made by department management. (Emphasis sup-

> Page, at the time of the grievance a Trucker in labor grade 3, had held the jobs of Lathe-Automatic labor

grade 7, Burr Bench, labor grade 5 and Borer—semi-automatic, labor grade 5. In order to prepare himself for the job in question he took and satisfactorily completed a 144 hour course in General Refrigeration and Air Conditioning at the Passaic County Technical and Vocational High School in April, 1967.

The Company argued that the occupation in question is among the skilled trades; that before an employee can enter it via the changeover route, under Article 42, Section 2 the Company must seek unsuccessfully to fill the job with a journeyman either from within or from the outside; and that it was able to fill the job in question with a journeyman from outside the plant. (Emphasis supplied).

In his Discussion the Arbitrator stated that the Agreement provided that "Before hiring or transferring changeover employees every reasonable effort will be made to fill openings in the Skilled Trades occupations with bonafide Journeymen."

He found that the occupation in dispute had been included in the Skilled Trades list of the contract "for the convenience of insulating * * * [it] from over-frequent displacement due to the operation of the seniority rules" but not because it was "apprenticeable" under the terms of a written apprenticeship agreement. He further found that this "non-apprenticeable occupation" of Refrigeration-Air Conditioner Operator, unlike the "orthodox apprenticeable machine shop, electrical, sheet metal and related skilled occupations," had a "greater tolerance for trainees who become qualified for entry by virtue of prior experience and outside training or study." Page's advancement, he held "should not be thwarted by a claim that outsiders who have had more experience in these non-apprenticeable occupations have a superior right to such openings." He then stated:

Thus, subject to a rule of reason that the Company's production needs must not be sacrificed to an influx of trainees, it follows that in the non-apprenticeable skilled trades the right of a qualified man to promotion under Article 30 is superior to the right to hire from the outside conferred by Article 42, Section 3.

The Arbitrator's Decision was as follows:

Grievance No. 31101 is granted. Chester Page shall be awarded the Refrigeration-Air Condition Operator job the first Monday after receipt hereof, subject to the normal rules governing promotions and to the Union's undertaking to save the Company harmless from any grievances arising out of Page's placement in that job.

It is noted that, although in the finding of facts the Arbitrator stated plaintiff here "filed the instant grievance charging discrimination on the Company's failure to honor his request to be upgraded to the job of Refrigeration-Air Condition Operator," the Arbitrator arrived at his decision by resolving in Page's favor the conflict between two apparently inconsistent provisions of the collective bargaining agreement, doing so without any discussion of alleged discriminatory treatment. Moreover, in his award, the Arbitrator did not grant backpay—or seniority—to the day the grievance was sustained (August 16, 1967). The Arbitrator did find that the Company was wrong in holding Page was unqualified for the position.

The second grievance arose under the following circumstances.

Under the terms of the foregoing award, plaintiff should have been put to work as a Refrigeration-Air Conditioner Operator as of May 6, 1968. The Company did not so place him until May 20, 1968. On May 16, 1968, it hired Artale. Both men worked until September 9, 1968, when Page was "excessed" back to his prior classification of power trucker. He then was returned to Refrigeration-Air Conditioner Operator on February 3, 1969. The deferral of plaintiff's starting date, and his "excess" from

September 9, 1968, to February 3, 1969, were taken to arbitration by the Union by grievance filed November 18, 1968. The Arbitrator's decision was handed down on July 7, 1969.

This decision held the Company had erred as to plaintiff's starting date; that it should have been May 6, 1968; that he was entitled to seniority (and back-pay as of that date), as claimed by the Union. The other Union claim, "for the pay and seniority he would have enjoyed had he not been compelled to go back to Power Trucker between September 9, 1968 and February 3, 1969," was denied. The Arbitrator found Artale was a "Journeyman" and Page a "Changeover" under Article 42 of the collective bargaining agreement. Therefore, since under the agreement "Changeover" employees were to be laid off before "Journeymen," Page's removal was held not to be improper.

The Arbitrator's decision does not mention any claim of discrimination by the Union nor does he on his own discuss such issue, except to find against the Union on its claim that the Company hired Artale in order to be able to excess Page. He did state that a certain management decision "must be presumed a valid exercise of * * * [management's] right absent strong evidence of an ulterior motive." He did not dwell upon what might be "an ulterior motive." Obviously, racial discrimination might be such; however, there is no evidence that this grievance charged racial discrimination.

■ Were the Complaint's charges against the parties narrowed to those determined in arbitration, there would be a question as to whether the doctrine of arbitral finality would bar judicial cognizance of the claim absent certain exceptions such as an averment of unfair representation under Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) and Bazarte v. United Transp. Union, 429 F.2d 868 (3 Cir. 1970). See Davidson v. International Union U. A. W. Local No. 1189, et al., 332 F.Supp. 375 (D.N.J.1971), for authorities on arbitral finality and the *Vaca* exception.[8]

---

8. The balancing of two powerful national policies is compelled when the desirability of settling disputes by arbitration, and consequent arbitral finality, is set off against the necessity of preserving and enforcing civil rights. Involved too is the election of remedies doctrine. *See* Mack, et al. v. General Electric Co., 329 F.Supp. 72, 77–78 (E.D.Pa.1971); Oubichon v. North American Rockwell Corp., 325 F.Supp. 1033 (C.D.Cal.1970); Newman v. Avco Corp., 313 F.Supp. 1069 (M.D.Tenn.1970); Edwards v. North American Rockwell Corp., 291 F.Supp. 199 (C.D.Cal.1968); Washington v. Aerojet-General Co., 282 F.Supp. 517 (C.D. Cal.1968); *Cf.* Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7 Cir. 1969).

Relying on the Steelworkers Trilogy [United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Mfg. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)], Dewey v. Reynolds Metals Co., 429 F.2d 324 (7 Cir.

1970), aff'd. mem. by equally divided Court, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971), decided in favor of arbitral finality, because to do otherwise " * * * [C]ould sound the death knell to arbitration of labor disputes. * * * " (429 F.2d at 332). This case involved religious, not racial discrimination. *But see* Tipler v. E. I. du Pont de Nemours and Co., 443 F.2d 125 (6 Cir. 1971), holding that a decision in an unfair labor practice proceeding was not *res judicata* as to a Title VII proceeding, in that the N.L.R.B. Trial Examiner had not permitted full presentation of the racial aspects of the claim before him. The Court noted (443 F.2d at 128): "Neither collateral estoppel nor res judicata is rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding public policy or result in manifest injustice. * * * " Finally, *see Fekete, supra,* where the Court of Appeals implied (424 F.2d at 333), in dealing with the question of mootness [*See* Rosen v. Public Service E. & G. Co., 409 F.2d 775 (3 Cir. 1969)], that arbitration would not bar suit based on a Complaint adding additional claims.

The Complaint, however, goes well beyond disparagement of Union representation at the two arbitration proceedings. It charges that the very foundation of the Company-Union relationship, the collective bargaining agreement, is violative of the civil rights of plaintiff and the class he purports to represent, and that the defendants have utilized the agreement to create and maintain systems of seniority and promotion which do violence to the noble goals of 42 U.S.C. § 1981.

■ Such a claim is federally cognizable. Young v. I. T. & T., *supra*; Hackett v. McGuire Bros., Inc., *supra*; Boudreaux v. Baton Rouge Marine Contracting Co., *supra*; *and see* Caldwell v. National Brewing Co., *supra*.[9] Judge Gibbons made this clear in *Hackett, supra,* when he stated (445 F.2d at 446–447):

> * * * In Fekete v. United States Steel Corp., 424 F.2d 331 (3rd Cir. 1970), this court rejected the contention that a claimant lost his right to proceed under Title VII by electing to pursue simultaneously a contractual

The better reasoned view is seen in Hutchings v. U. S. Industries, 428 F.2d 303 (5 Cir. 1970), which upheld as federally cognizable a Title VII suit, notwithstanding earlier grievance and arbitration proceedings involving the same issues which had been decided against plaintiff; *and see* Culpepper v. Reynolds Metals Co., 421 F.2d 888 (5 Cir. 1970) ; McGriff v. A. O. Smith Corp., 51 F.R.D. 479 (D.S.C. 1971) ; Mack, et al. v. General Electric Co., *supra. See also* Developments In The . Law—Employment Discrimination And Title VII Of The Civil Rights Act Of 1964, 84 Harv.L.Rev. 1109, 1222–1228 (1971). (Hereinafter, Developments—Title VII).

9. See Contractors Ass'n. of Eastern Pennsylvania v. Shultz, 442 F.2d 159, 174 (3 Cir. 1971) : " * * * Of course collective bargaining agreements which perpetuate the effects of past discrimination are unlawful under Title VII. Local 189, United Papermakers & Paperworkers v. United States, * * * [416 F.2d 980 (5th Cir. 1969), cert. denied 397 U.S. 919, [90 S.Ct. 926, 25 L.Ed.2d 108] (1970)] ; United States v. Sheet Metal

remedy which afforded partial relief. * * * Hackett is a Negro and purports to represent potential and actual Negro employees in eliminating discrimination by McGuire and by Local 187. The *Young* case recognizes his right to bring such a suit under § 1981.

The national public policy reflected both in Title VII of the Civil Rights Act of 1964 and in § 1981 may not be frustrated by the development of overly technical judicial doctrines of standing or election of remedies. If the plaintiff is sufficiently aggrieved so that he claims enough injury in fact to present a genuine case or controversy in the Article III sense, then he should have standing to sue in his own right and as a class representative.

Accordingly, there is no basis for granting summary judgment based upon the prior arbitration proceedings.

The defendant also seeks summary judgment on the ground that the plaintiff had prior to suit submitted his claim of discrimination to the Office of Federal

Workers, Local 36, 416 F.2d 123, 132 (8th Cir. 1969). * * * " *See also* N.L.R.B. v. Local 269, Intern'l. Bro. Elec. Workers, 357 F.2d 51 (3 Cir. 1966). Certiorari was denied in Contractors Ass'n. 404 U.S. ——, 92 S.Ct. 98, 30 L.Ed. 2d 95.

The doctrine of "primary jurisdiction," which would mandate here judicial self-restraint and deference to the National Labor Relations Board, is determined not to be applicable. *See* International Brotherhood of Boilermakers, Iron Shipbuilders, etc. v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971) ; *Cf.* San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). *See also* Plant v. Local Union 199, et al., 324 F.Supp. 1021, 1024–1027 (D.Del.1971). *Cf.* Richardson v. Communications Workers of America, et al., 443 F.2d 974 (8 Cir. 1971), where a § 301 claim against an employer and the Union for wrongful discharge (29 U.S.C. § 185) was combined with a claim against the Union for intentional discrimination against plaintiff, a non-member.

Contract Compliance (hereafter OFCC), which decided adversely to him, and, for the further reason, that the plaintiff failed, by not appealing the OFCC decision, to exhaust his administrative remedies.[10]

■■ An administrative determination can, under appropriate circumstances, be *res judicata* and thus bar a hopeful litigant from seeking a judicial redetermination. Taylor v. New York City Transit Authority, 433 F.2d 665 (2 Cir. 1970). Here, however, assuming *arguendo* that there had been an administrative hearing and a determination judicial in nature, neither *res judicata*, nor election of remedies [*see* Abdallah v. Abdallah, 359 F.2d 170 (3 Cir. 1966)] operates to bar this suit.

What was submitted to OFCC was what was submitted at the second arbitration. As was said with respect to the defendant's arbitration argument, what is presented by the Complaint herein goes well beyond the narrow issue of plaintiff's having been "excessed," or not having been afforded a two-week earlier seniority date. For this reason, this alternate ground urged for summary judgment is equally undeserving of serious consideration.

Defendant's motion for summary judgment is denied.

Curtiss-Wright also seeks an order declaring that this action is not maintainable as a class action under F.R. Civ.P. 23(a).[11]

The plaintiff has brought this action on his own behalf and the class he proposes to represent, alleging that defendants have engaged in racially discriminatory policies related to the collective bargaining agreement between them. He seeks to bring the action on behalf of Negroes who are employed, or might be employed by Curtiss-Wright and who are members or might become members of the defendant Union, who have been and continue to be or might be adversely affected by the practices which are the subject of this Complaint.

The critical allegations in the Complaint as it relates to the class action question are as follows:

> All matters regarding compensation, terms, conditions and privileges of employment of the plaintiff and the class he represents have been * * * governed and controlled by collective bargaining agreements entered into between * * * [the Union and the Company]. Under and pursuant to

10. OFCC enforces Executive Order 11246. OFCC receives complaints of discrimination by federal contractors and may or may not hold hearings. Here no hearing was held. The history and development of this Order is set forth in Contractors Ass'n. of Eastern Pennsylvania v. Shultz, 442 F.2d 159 (3 Cir. 1971), cert. denied 404 U.S. 95, 92 S.Ct. 98, 30 L.Ed.2d —— (10/12/71), upholding the validity of 11246, against the claim that, by enacting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., Congress occupied the field of eliminating and dealing with discrimination in employment. The Court held "Congress contemplated continuance of the Executive Order program. Moreover we have held that the remedies established by Title VII are not exclusive. Young v. International Telephone & Telegraph Co., 438 F.2d 757 (3d Cir. 1971)." (442 F.2d at 171). *See also* Joyce v. McCrane, et al., 320 F.Supp. 1284 (D.N.J.1970). *Cf.* Farmer v. Philadelphia Electric Co., 329 F.2d 3 (3 Cir. 1964), where an individual at-

tempted to bring an action for violation of the nondiscrimination provisions in his employer's contract with the United States. The Third Circuit held that there was no private right of action under an Executive Order which antedated Executive Order 11246. The Court noted in passing that the OFCC proceeding involved *conciliation* more than litigation. *See also* Developments—Title VII, 84 Harv.L.Rev. 1109, 1273-1304 (1971).

11. We need deal only with Rule 23(a) which reads as follows: "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

the terms of the aforementioned agreements, the defendants have established a promotional and seniority system, the design, intent and purpose of which is to continue and preserve, and which has the effect of continuing and preserving, the defendants' policy, practice, custom and usage of limiting the employment and promotional opportunity of Negro employees of the Company because of race or color. (¶ VI).

\*　　\*　　\*　　\*　　\*　　\*

The effect, purpose and intent of the agreement \* \* \* has been and continue (sic) to be to limit, segregate, classify and discriminate against Negro workers at their factory and plant \* \* \* in ways which jeopardize the jobs of and tend to deprive the said Negro workers of employment opportunities and otherwise adversely affect their status as employees because of their race and color. (¶ VII).

\*　　\*　　\*　　\*　　\*　　\*

The Company has from time to time posted bids for jobs as they became vacant in the several departments and/or job categories. Negro plaintiff and Negro employees have submitted bids for these jobs. In July, 1967, however, they were advised by the Company that they would first have to pass a battery of tests before they would be eligible to bid for the job vacancies. Plaintiff believes and alleges that the tests are not professionally developed ability tests within the meaning of 42 U.S.C. § 2000e–2(h) and that the use of said tests, their administration, and action upon the results is intended to discriminate against Negro employees because of race and color. (¶ VIII).

\*　　\*　　\*　　\*　　\*　　\*

\* \* \* The way in which the lines of progression and methods of hiring are presently structured is intended to discriminate, and has the effect of discriminating, against plaintiff and the class he represents. (¶ IX).

Plaintiff and the class he represents is (sic) qualified for promotions and for training which could lead to hiring and promotions on the same basis as such opportunities are provided for white employees. (¶ X).

\*　　\*　　\*　　\*　　\*　　\*

Defendants I.U.U.A.A.A.I.W.A. and Local 669 have violated and continue to violate their duty of fair representation imposed on them by the National Labor Relations Act in that they have acquiesced and/or joined in the unlawful and discriminatory practices and policies complained of in Paragraphs I through XI inclusive and they have failed to protect the Negro members of the Company from said discriminatory policies and practice. The Company has knowingly participated in or acquiesced in said violation of the duty of fair representation. (¶ XIV).

Hackett v. McGuire Bros., Inc., *supra,* depicts the stream of tendency for the Courts of this Circuit in civil rights suits in which class action status is sought under F.R.Civ.P. 23. *See also* the broad sweep accorded 42 U.S.C. § 1981 in Young v. I.T. & T., *supra.*

There are of course factual distinctions between *Hackett* and the case at bar; however, the overriding principle is there in bold relief, that the courts bound by *Hackett* are to generously construe pleadings and the relief sought, so as to deliver relief from racial discrimination on the broadest possible front.

In the instant case the Complaint claims that the defendants, by their collective bargaining agreement, have contrived to establish seniority and promotion systems which are designed to either exclude Negro employees altogether, or to greatly restrict their opportunities for advancement. Under *Hackett* this surely qualifies this case for class action status as to Rule 23(a) (2) ("there are questions of law or fact common to the class") and (a) (3) ("the claims or defenses of the representative

parties are typical of the claims or defenses of the class.")

Rule 23(a) (4) requires that "the representative parties will fairly and adequately protect the interests of the class." I find this requirement to be fulfilled, based first upon my observation of plaintiff's counsel herein, and secondly, by reason of the absence of challenge to either plaintiff's or his counsel's qualification in this respect. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2 Cir. 1968).

Rule 23(a) (1), however is another matter ("the class is so numerous that joinder of all members is impracticable"). The Complaint of course makes this allegation. At this stage of the proceeding, however, this case having been commenced a year ago, elaborate discovery by deposition and interrogatories having been pursued, and there having been more than adequate time for investigation into defendants' practices by plaintiff's experienced and able counsel, this Court must have more than the naked assertion of the Complaint. Committee to Free Ft. Dix 38, etc. v. Collins, 429 F.2d 807 (3 Cir. 1970); Male v. Crossroads Associates, et al., 320 F. Supp. 141, 150 (S.D.N.Y.1970), citing De Marco v. Edens, 390 F.2d 836, 845 (2 Cir. 1968); and see Judge Fullam's statement in Philadelphia Electric Co. v. Anaconda American Brass Co., 42 F.R.D. 324, 328 (E.D.Pa.1967), that " * * * no litigant should be permitted to enhance his own bargaining power by merely alleging that he is acting for a class of litigants. * * *" See also Rothman v. Gould, 52 F.R.D. 494, 495–496 (S.D.N.Y.1971), imposing responsibility upon plaintiff's counsel to investigate compliance with F.R.Civ.P. 23 before filing such a Complaint.

Factually, on oral argument plaintiff's counsel was unable to name even one member of the purported class. Moreover, on April 23, 1971, the moving defendant served upon plaintiff's counsel Interrogatories which included questions calling for identification of members of the purported class. Although long overdue, defendant had still not received answer when he moved on September 27, 1971, for an order, which was granted, compelling answers within 20 days thereof. Parenthetically it is noted that by Pre-Trial Order filed May 20, 1971, all discovery was to have been completed by July 30, 1971.[12] Finally, on plaintiff's deposition he mentioned only five people who, he said, fell into the purported class (Tr. 94–98), as well as one, a Mr. Harry Wise, who had to take an alleged discriminatory test (Tr. 56–57).

■ Accordingly, at this time, and for the reasons set forth [Interpace Corp. v. City of Philadelphia, 438 F.2d 401, 404 (3 Cir. 1971)], I shall deny class action treatment of this action on a conditional basis, as permitted by F.R.Civ.P. 23 (c) (1). See Hyatt v. United Aircraft Corp., 50 F.R.D. 242 (Conn.1970); Bond v. Dentzer, 325 F.Supp. 1343 (N.D.N.Y. 1971); Smith v. North American Rockwell Corp., 50 F.R.D. 515 (N.D.Okla. 1970); Burney v. North American Rockwell Corp., 302 F.Supp. 86 (C.D.Cal. 1969). See also Kauffman et al. v. Dreyfus Fund et al., 434 F.2d 727 (3 Cir. 1970), cert. denied 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971); Kahan v. Rosenstiel, 424 F.2d 161 (3 Cir. 1970), cert. denied 398 U.S. 950, 90 S. Ct. 1870, 26 L.Ed.2d 290 (1970); DeBremaecker v. Short, 433 F.2d 733 (5 Cir. 1970). But see Lewis, et al. v. Kugler, 446 F.2d 1343 (3 Cir. 1971); Tipler v. E. I. du Pont de Nemours and Co., supra; Sprogis v. United Air Lines, Inc., 444 F.2d 1194 (7 Cir. 1971); Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8 Cir. 1970); Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5 Cir. 1969); Jenkins v. United Gas Corp., 400 F.2d 28 (5 Cir. 1968); Mack v. General Electric Co., 329 F.Supp. 72 (E.D.Pa.1971); Long v. Georgia Kraft Co., 328 F.Supp. 681 (N.D.Ga. 1971). See also Developments—Title VII, 84 Harv.L.Rev. 1109, 1113–1119, 1218–

12. Other provisions of this Order have not yet been fulfilled, including drafting and filing of a Stipulation of Facts. Further violation of the terms of this Order will cause sanctions to be imposed.

1222 (1971); Kaplan, 1966 Amendments of the Federal Rules of Civil Procedure, 81 Harv.L.Rev. 356, 375 (1967); 3B Moore, Federal Practice, ¶ 23.05 at 23–271 (1969).

The moving defendant has also challenged the validity of the Equal Employment Opportunity Commission regulation which permits the Commission to refer a complaint to the appropriate state agency, effectively extending the time for E.E.O.C. consideration of the Complaint by sixty days (29 C.F.R. § 1601.12). This regulation will shortly come under review by the United States Supreme Court in Love v. Pullman, 430 F.2d 49 (10 Cir. 1969), cert. granted 401 U.S. 907, 91 S.Ct. 873, 27 L.Ed.2d 805 (1971). Accordingly, defendant's challenge will not be considered at this time; and there is no necessity to do so in view of this Court's retaining jurisdiction hereof under 42 U.S.C. § 1981.

An appropriate form of Order is to be submitted.

### APPENDIX

The chronology of the various submissions and decisions is as follows:

1. May 2, 1968—Arbitration decision on Company's refusal to give plaintiff a changeover transfer to job of Refrigeration-Air Conditioner Operator. Held: Page was to be awarded the job.

2. March 10, 1969—Plaintiff filed a Complaint with EEOC.

3. March 17, 1969—EEOC deferred to New Jersey Division on Civil Rights.

4. March 19, 1969—Plaintiff filed Complaint with the Office of Federal Contract Compliance, U. S. Department of Labor.

5. April 6, 1969—EEOC assumed jurisdiction. This date is the 209th day after the date of the alleged violation.

6. July 7, 1969—Arbitration decision based on plaintiff's being "excessed" on September 9, 1968 (plaintiff was returned temporarily to "journeyman" classification on February 3, 1969) while Artale, who was hired on May 16, 1968 as a "journeyman," continued to work. Held: Page had a date of seniority of May 6, 1968, but his "excess" was in accordance with the collective bargaining agreement since Artale was a journeyman.

7. August 12, 1969—Decision rendered on plaintiff's Complaint to the Office of Federal Contract Compliance. (decision corrected August 14, 1969).

8. September 15, 1969—Plaintiff complained to the New Jersey Department of Law and Public Safety, Division on Civil Rights.

9. September 2, 1970—Plaintiff requested a right to sue notice from EEOC in accordance with 29 C.F.R. § 1601.25.

10. September 25, 1970—Right to sue notice mailed to plaintiff.

11. September 29, 1970—Right to sue notice received by plaintiff.

12. October 26, 1970—Suit commenced by plaintiff.