Dr. Ina BRADEN, on behalf of herself and all others similarly situated,

v.

The UNIVERSITY OF PITTSBURGH and Wesley W. Posvar.

Civ. No. 71–646.

United States District Court, W. D. Pennsylvania.

Jan. 31, 1972.

Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., David Berger & Howard L. Schambelin, Philadelphia, Pa., Sylvia Roberts, Baton Rouge, La., for plaintiff.

James M. Arensberg, Pittsburgh, Pa., for defendants.

## MEMORANDUM

SORG, District Judge.

Dr. Ina Braden, plaintiff, is employed by the corporate defendant University of Pittsburgh as an Assistant Professor in the Learning Resources Division of the University's Dental School. Dr. Wesley W. Posvar, the individual defendant, is the Chancellor of the University. Dr. Braden has brought this action, on her own behalf and on behalf of all women currently or previously employed by the University in "professional positions" from January of 1968 to the present, in four counts, alleging unlawful discrimination by the University and Dr. Posvar against those female professional employees. The defendants move to dismiss all four counts of the complaint, as amended, on jurisdictional grounds.

Count I of the complaint is brought under § 1981 of the Civil Rights Act of 1870, 42 U.S.C.A. § 1981.[1] It alleges that the defendants have since 1968 "enacted and effected policies and practices of unlawful and systematic discrimination against women as a class", as evidenced by alleged disparities in

---

1. The Civil Rights Act of 1866, which included what are now 42 U.S.C.A. §§ 1981 and 1982, was re-enacted in 1870. 42 U.S.C.A. § 1981 provides:

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

compensation, terms, conditions, privileges and opportunities of employment, and by alleged harassment and degradation of those women who are or have been active in criticizing and publicizing the alleged unequal status of women at the University. The complaint alleges the non-renewal of employment contracts of certain women, including the named plaintiff, and the continued pressuring of plaintiff and others to "conform". The defendants move to dismiss this count on the grounds that in alleging discrimination based upon sex but not upon race it fails to state a claim cognizable under 42 U.S.C.A. § 1981.

The Supreme Court has made it clear that the Civil Rights Act of 1866, predecessor of 42 U.S.C.A. § 1981, and termed the model for the phrase "any law providing for . . . *equal civil rights*," (emphasis added), Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), was not intended to and should not be construed to apply to discrimination on any basis other than race:

> The legislative history of the 1866 Act clearly indicates that Congress intended to protect a limited category of rights, specifically defined in terms of racial equality. As originally proposed in the Senate, § 1 of the bill that became the 1866 Act did not contain the phrase 'as is enjoyed by white citizens'. That phrase was later added in committee in the House, apparently to emphasize the racial character of the rights being protected. Georgia v. Rachel, *supra*.

See also the complete history of the 1866 Act as set out in Jones v. Alfred H. Meyer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

Consistently with this interpretation, courts have held, both before and after the Supreme Court's decisions cited above, that complaints brought under 42 U.S.C.A. § 1981 alleging discrimination based upon grounds other than race cannot confer jurisdiction on the federal courts. See, e. g., Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 959, 77 S.Ct. 868, 1 L.Ed.2d 910 (1957); (1944); Agnew v. Compton, 239 F.2d 226 (9 Cir. 1956), cert. denied, 353 U.S. Ambrek v. Clark, 287 F.Supp. 208 (E.D. Pa.1968); Schetter v. Heim, 300 F. Supp. 1070 (E.D.Wisc.1969). A careful consideration of the contentions advanced by the plaintiff has not convinced the court that a departure from the above rule is warranted. Accordingly, since plaintiff's complaint does not allege discrimination based upon race, this court has no jurisdiction over the count alleging a violation of 42 U.S.C.A. § 1981.

Count II of plaintiff's complaint asserts that the same facts alleged in Count I constitute a violation of 42 U.S.C.A. § 1983.[2] The defendants urge dismissal of this count on the grounds that plaintiff has not alleged and cannot show any discrimination involving state action or carried out under color of state law.

42 U.S.C.A. § 1983, Civil Rights Act of 1871, unlike § 1981 discussed above, does not require a showing of discrimination based upon race. However, § 1983 is directed at those who misuse powers possessed by virtue of state law. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). A § 1983 plaintiff, therefore, must establish not only that a federally-protected right has been violated but that the state has become involved to some significant extent in the violation. Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S. Ct. 856, 6 L.Ed.2d 45 (1961).

---

2. 42 U.S.C.A. § 1983 provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

While the courts understandably have avoided creating any precise formula for determining what conduct will constitute the requisite significant involvement by the state in the affairs of an otherwise private entity, preferring to weigh the facts and circumstances of each case, Burton v. Wilmington Parking Authority, *supra*, it is clear that the inquiry must be limited to whether or not, and to what extent, the state has involved itself in the particular activity complained of. See, e. g., Blackburn v. Fisk University, 443 F.2d 121 (6 Cir. 1971); Grossner v. Trustees of Columbia University, 287 F.Supp. 535 (S.D.N.Y.1968). Further, the test is not merely some scintilla of state action, but evidence of substantial state involvement in the activity complained of. See Commonwealth of Pennsylvania v. Brown, 270 F.Supp. 782 (E.D.Pa. 1967).

Plaintiff asserts that the University is sufficiently state-related to satisfy these requirements. The requisite state involvement is alleged to appear in the presence of state-appointed trustees on the University's governing board, in the state's contribution of approximately one-third of the University's annual budget, and in the exemption of the University's bonds from state taxation. All of these incidents of state involvement with the University were mandated by the Commonwealth Act of 1966, 24 P.S. § 2510–201 et seq., which designated the University of Pittsburgh as a state-related institution in Pennsylvania's system of higher education. The Act, however, did not endow the University with the attributes of a state agency.

State involvement sufficient to transform a private university into an agency of the state within the meaning of § 1983 requires more than incorporating or chartering the University, Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 17 U.S. 518, 4 L.Ed. 629 (1819); Powe v. Miles, 407 F.2d 73 (2 Cir. 1968); providing financial aid in the form of public funds, Grossner v. Trustees of Columbia University, *supra*; or granting tax exemptions, Browns v.

Mitchell, 409 F.2d 593 (10 Cir. 1969). Nor does a combination of these conditions constitute the requisite state involvement. Blackburn v. Fisk University, *supra*. With respect to Pennsylvania's power to appoint approximately one-third of the trustees on the University's governing board, this court's research has not revealed any prior treatment of the issue in the pertinent context. The existence of minority representation on a board of trustees, however, can hardly establish a position of such "interdependence" between the state and the University as is necessary to support a finding of state agency. In Burton v. Wilmington Parking Authority, *supra*, the Supreme Court held:

> The State has so far insinuated itself into a position of interdependence with [the defendant] that it must be recognized as a joint participant in the challenged activity which, on that account, cannot be considered to have been . . . "purely private."

The instant case, however, does not parallel the circumstances in *Burton* which required the above conclusion. In *Burton,* it was conceded that the Negro plaintiff was refused service because of his race in a privately-owned restaurant leased from the state and located within a public parking garage owned and operated by an agency of the State of Delaware. The record in this case discloses no proprietary interest in University facilities on Pennsylvania's part, nor does it reveal any engaging in interdependent activities by that State and the entity whose policy is challenged. By the same token, the state has not cloaked the University's Chancellor with state authority. Unless the business of the University is deemed state action, his acts as Chancellor are not performed under color of state law. Accordingly, this court is without jurisdiction as to either defendant over the subject matter of plaintiff's § 1983 claim as set forth in Count II of her complaint.

In Count III of her complaint plaintiff alleges that the University has violated Presidential Executive Order

No. 11246, 30 F.R. 12319 (Sept. 28, 1965), as amended by Executive Order No. 11375, 32 F.R. 14303 (Oct. 17, 1967), which requires that federal contractors and sub-contractors refrain from discriminating in their employment practices. The violations claimed are the alleged discriminatory acts relied upon in Counts I and II and also the University's alleged failure to take "affirmative action," as required by the Order, to insure the equal treatment of all employees, including plaintiff, without regard to sex.

■ It is well established that Executive Orders have the force of federal law and that controversies concerning them arise "under the laws of the United States" as contemplated by 28 U.S.C.A. § 1331(a). Thus the federal courts have jurisdiction over such controversies. Farmer v. Philadelphia Electric Co., 329 F.2d 3 (3 Cir. 1964). However, the defendant contends that private action to enforce the Order in question was not contemplated and is not provided for in the Order, and thus plaintiff has not and cannot state a claim thereunder upon which relief can be granted.

A careful reading of Executive Order No. 11246, as amended, 3 C.F.R. 424 (1971), and the regulations issued pursuant thereto, 41 C.F.R. 145 (1971), discloses no provisions which suggest or create any right in an individual or individuals to seek injunctive relief or to assert a claim for damages against an alleged non-complying contractor. Rather, the Order provides for the enforcement of its terms by the Office of Federal Contract Compliance of the U. S. Department of Labor, which agency has properly delegated to the U. S. Department of Health, Education and Welfare the supervision of compliance by educational institutions. The Order contains numerous measures which the agency may invoke upon receipt of complaints charging a contractor with non-compliance. It authorizes the investigation by the agency of the alleged non-compliance and also provides for criminal and/or civil proceedings by the Justice Department in the event of continued non-compliance. From the language of the Order it thus appears that private action against alleged non-complying contractors was not contemplated, although the Order does not preclude individuals from setting forth the acts which comprise the alleged non-compliance in *valid* actions brought under other federal or state laws for relief not provided by the Order. See Farkas v. Texas Instrument, Inc., 375 F.2d 629 (5 Cir. 1967), cert. denied 389 U.S. 977, 88 S.Ct. 480, 19 L. Ed.2d 471 (1967). See also Farmer v. Philadelphia Electric Co., *supra*; Page v. Curtiss-Wright Corp., 332 F.Supp. 1060 (D.N.J.1971) at 1069, n. 10. Since Count III of plaintiff's complaint presupposes the validity of a private cause of action under the Executive Order, it fails to state a claim upon which relief can be granted and must be dismissed. The decision in Thorn v. Richardson, (W.D.Wash., No. 9577, Opinion of Judge Bowen filed December 10, 1971), is not inconsistent with this view. *Thorn* was a mandamus action in which the court ordered federal and state parties to the proceeding to perform duties set out in the Executive Order; it did not involve, as here, a private claim against an alleged non-complying contractor.

Count IV asserts that certain of the alleged discriminatory acts violate the Pennsylvania Equal Pay Law, 43 P.S. § 336.2 et seq. Pendent federal jurisdiction is claimed. Lack of jurisdiction with respect to the first three counts of the complaint, however, precludes the assumption of pendent jurisdiction at this stage of the proceeding. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

An appropriate Order will be entered.