DONALD T. MANCUSO, PLAINTIFF(S), v. BOROUGH OF NORTH ARLINGTON, A MUNICIPAL CORPORATION; ROBERT C. RIKER, CHIEF OF POLICE OF THE BOROUGH OF NORTH ARLINGTON; MAYOR AND TOWN COUNCIL OF THE BOROUGH OF NORTH ARLINGTON; COUNCILMAN LEONARD KAISER; COUNCILMAN RAYMOND KOPYCIENSKI; COUNCILMAN ANDREW CERCO; COUNCILMAN EDWARD SANZALONE AND MAYOR EDWARD MARTONE, INDIVIDUALLY, DEFENDANT(S).

Superior Court of New Jersey
Law Division Bergen County

Decided March 18, 1985.

428

 

*Joseph Buttafuoco,* for plaintiff(s).

*Edwin C. Eastwood, Jr.,* for defendant(s).

SCIUTO, J.S.C.

This matter was opened to the court on defendants' motion for summary judgment.

Plaintiff was employed by defendant Borough of North Arlington as a policeman for a period of approximately ten years. Following a series of meetings between plaintiff and defendant, Chief Robert C. Riker, plaintiff tendered an oral resignation to Chief Riker on October 4, 1982, followed by a written resignation on October 5, 1982. Thereafter, plaintiff sought to rescind his resignation.

By resolution dated October 19, 1982, the mayor and council, acting in their official capacities on behalf of the Borough of North Arlington, accepted the plaintiff's resignation.

Thereafter, on October 26, 1982, plaintiff, through counsel, filed an appeal with the New Jersey Civil Service Commission alleging *inter alia* that his resignation was the product of duress and that defendants were obligated to accept his attempted rescission of his resignation. Following a full adversarial hearing, Administrative Law Judge Carl J. Jahnke rejected plaintiff's arguments and found in favor of defendants. Plaintiff filed exceptions to Judge Jahnke's decision with the Civil Service Commission. The commission affirmed Judge Jahnke's decision on September 15, 1983. Thereafter plaintiff filed the within action.

I.

The Effect of a Prior Administrative Decision on a
Subsequent Action Brought in the Law Division

Defendants seek dismissal of counts one through six of the complaint. It is their contention that plaintiff is collaterally estopped from relitigating factual issues which have been found adversely to him by the Civil Service Commission.

New Jersey cases involving the application of *"res judicata"* and "collateral estoppel" [1] to administrative agency action have addressed situations where the relief sought was a subsequent administrative determination. *See, e.g., City of Hackensack v. Winner,* 162 *N.J.Super.* 1 (App.Div.1978), mod., 82 *N.J.* 1 (1980). There exists, however, a considerable body of case law in the federal courts which deals with this important question. It is to these cases that the court looks for guidance in resolving the instant matter.

■ Under the appropriate circumstances an administrative determination can be *res judicata* and prevent a party from seeking a judicial redetermination of the same issues. *Page v. Curtiss-Wright Corp.,* 332 *F.Supp.* 1060, 1069 (D.C.N.J.1971). In *Page* the federal district court allowed plaintiff to proceed with a claim under the Civil Rights Act of 1964, § 701 *et seq.,* 42 *U.S.C.A.* § 2000e *et seq.,* despite earlier administrative proceedings involving the same issues which were decided against him. *Id.* at 1068. The court reasoned that such a claim was federally cognizable for two reasons. First, the complaint was not limited to those issues determined at the administrative level. *Id.* at 1067. *See also Fekete v. United States Steel Corp.,* 424 *F.*2d 331 (3 Cir.1970) (Arbitration would not bar a suit based upon a complaint adding additional claims.) Second, the national public policy reflected in the Civil Rights Act should not be frustrated by technical judicial doctrines. *Page, supra,* 332 *F.Supp.* at 1068.

The instant matter is distinguishable from that before the *Page* court. The similarity ends with plaintiff bringing an action in the Law Division after an unfavorable determination at the administrative level. Unlike *Page,* the instant complaint involves the identical issues addressed by Judge Jahnke in a

---

[1] Although the doctrines have differences, the differences are not relevant to the disposition of this matter. For the purposes of this opinion I will treat both under the generic term collateral estoppel.

well-reasoned opinion rendered after a full adversarial hearing. This identity of issues and the full panoply of procedural due process safeguards afforded to plaintiff in the instant case were absent in *Page*. *Id.* at 1069. Cases decided subsequent to *Page* illustrate "appropriate circumstances" for the application of *res judicata* or collateral estoppel to an administrative action.

■ "The findings and judgments of an administrative tribunal are entitled to full faith and credit in all courts if the tribunal was acting in a judicial capacity in rendering its decision." *Buckhalter v. Pepsi-Cola General Bottlers, Inc.*, 590 *F.Supp.* 1146, 1148 (N.D.Ill.1984); *U.S. Const.*, Art. IV, § 1. The Supreme Court of New Jersey has long recognized that an agency's function is an exercise of judicial power if the agency observes the traditional due process safeguards against arbitrary action. *Handlon v. Town of Belleville*, 4 *N.J.* 99, 104 (1950). The Legislature has vested the Civil Service Commission with the power to act in a judicial capacity through the requirement of a hearing in contested cases. *N.J.S.A.* 11:22–38. Acting now within the scope of legislatively delegated power, *N.J.S.A.* 52:14F–1 *et seq.*, Administrative Law Judge Jahnke conducted a full adversarial hearing. Plaintiff was afforded the opportunity to conduct discovery, present witnesses, introduce evidence and conduct cross-examination. "Here, the power exercised was clearly judicial in nature. The Legislature has so considered it." *Handlon, supra*, 4 *N.J.* at 106; *N.J.S.A.* 11:22–38 *et seq.* Accordingly, the action of the Civil Service Commission is entitled to full faith and credit in all courts. *U.S. Const.*, Art. IV, § 1; *Buckhalter, supra*, 590 *F.Supp.* at 1148.

■ This finding does not, in and of itself, resolve the question of whether the doctrines of *"res judicata"* and "collateral estoppel" should apply. The court in *Anthan v. Professional Air Traffic Controllers*, 672 *F.*2d 706 (8 Cir.1982) provided the necessary criteria:

Before an administrative adjudication will constitute collateral estoppel, the following prerequisites must be met:

(1) the issue must be identical to one in a prior adjudication;

(2) there was a final judgment on the merits;

(3) the estopped party was a party or was in privity with a party to the prior adjudication; and

(4) the estopped party was given a fair opportunity to be heard on the adjudicated issue. [at 709; citations omitted]

In the matter before the court these criteria are satisfied. The factual issues raised in plaintiff's complaint are identical to those disposed of by Judge Jahnke in an exhaustive and well reasoned opinion. There was a final judgment on the merits when the Civil Service Commission adopted Judge Jahnke's opinion. The parties are the same as those before the administrative agency. Finally, the parties were afforded a full adversarial hearing at the administrative level.

The basic considerations of speed, expertise, impartiality and judicial economy underlying our administrative process have been satisfied by the prior administrative proceeding. These considerations in conjunction with the due process safeguards afforded plaintiff at the agency level constitute the "appropriate circumstances" for the application of *"res judicata"* and "collateral estoppel" to those portions of plaintiff's complaint contained in counts one through six of the complaint. *Page, supra,* 332 *F.Supp.* at 1067.

## II.

### Questions of Law Decided at the Administrative Level

■ Plaintiff contends that defendants' refusal to accept rescission of his resignation was improper. In a portion of his opinion, Judge Jahnke construed *N.J.A.C.* 4:1–16.12(c) to vest the defendants with discretion to accept rescission. If plaintiff takes exception with the interpretation of a question of law by the administrative law judge, his remedy is a timely appeal to the Appellate Division. *R.* 2:2–3(b). Since this court lacks jurisdiction to review questions of law decided at the adminis-

trative level, I decline to rule on the correctness of Judge Jahnke's interpretation, leaving plaintiff to seek relief in the appropriate forum.

### III.

### Plaintiff's Claim Under 42 *U.S.C.A.* § 1983

■ There are substantial public policy considerations which will sometimes allow a plaintiff to pursue a civil rights claim after being denied relief at the administrative level. *Page, supra,* 332 *F.Supp.* at 1067. As discussed in an earlier portion of this opinion, plaintiff in *Page* was never afforded the full adversarial hearing present in the instant case. *Id.* at 1069. This lack of procedural due process safeguards at the agency level is a common thread running through those cases where plaintiff has been able to proceed with a subsequent action at law based on a violation of his civil rights. *See, e.g., Griffen v. Big Spring Independent School District,* 706 *F.*2d 645 (5 Cir.1983) (Procedures of state administrative body grossly inadequate).

However, courts have not hesitated to invoke collateral estoppel when the party seeking judicial repose demonstrates identity between issues in the present cause of the action and those decided in the prior administrative proceeding. *Gear v. City of Des Moines,* 514 *F.Supp.* 1218, 1223 (S.D.Iowa 1981).

*Gear* is directly on point with the instant matter. There, a former police officer brought suit under the Civil Rights Act of 1871, 42 *U.S.C.A.* § 1983, claiming discriminatory discharge. The district court held that a hearing and appeal before the Iowa Department of Job Service precluded relitigation of questions decided at the administrative level in a subsequent suit alleging civil rights violations. *Id.* at 1221. The procedures employed in the Iowa administrative scheme consisted of a "pronounced adversarial structure" which "strongly encourages litigants to dilligently endeavor to further their respective positions." *Id.* at 1222. Plaintiff in the instant case was provided with the same procedures. Each of the factual issues

for which defendants seek estoppel was "within the agency's expertise, thereby ensuring the adequacy of the fact finding process." *Ibid.*

■ The decision to prevent a plaintiff from proceeding with a civil rights claim is not undertaken lightly. Prior decisions caution that "the doctrine of collateral estoppel should be employed more selectively and with a greater degree of flexibility when an administrative finding is involved." *Id.* at 1221. *See also United States v. Smith,* 482 *F.*2d 1120, 1123 (8 Cir.1973); *Grose v. Cohen,* 406 *F.*2d 823, 824–825 (4 Cir.1969); *Housworth v. Glisson,* 485 *F.Supp.* 29, 34 (N.D.Ga.1978), aff'd, 614 *F.*2d 1295 (5 Cir.1980). But even the broad constitutional protections inherent in 42 *U.S.C.A.* § 1983 do not exist in a vacuum. The statute is only given force and effect by the existence of certain operative facts. Here, where the complaint involves the identical factual issues determined at the agency level, success on plaintiff's § 1983 claim would require contrary factual findings. For the reasons stated above "collateral estoppel" bars plaintiff from relitigating those findings in a subsequent lawsuit.

This is not merely the application of a "technical judicial doctrine." *Page, supra,* 332 *F.Supp.* at 1068. This is more precisely a question of plaintiff's resort to an inappropriate remedy. If plaintiff disagrees with the findings of fact made at the administrative level he may seek judicial review in the Appellate Division. *R.* 2:2–3(b).

Since plaintiff is collaterally estopped from relitigating the issues on which his § 1983 claim is based, summary judgment is granted to defendants on counts one through six of the complaint.

## IV.

### Plaintiff's Claim for Breach of the Collective Bargaining Agreement

■ Count seven of the complaint alleges breach of a collective bargaining agreement between the Borough of North Ar-

lington and the Policemen's Benevolent Association of North Arlington. This count is derivative of the first six counts of the complaint in that it alleges no new facts and merely incorporates the first six counts by reference. For the same reasons discussed in parts I, II and III of this opinion, count seven is also ripe for summary judgment.

Accordingly, summary judgment on count seven of the complaint is granted.